The court now calls agenda number 5, case 115-964, People of the State of Illinois v. Juliana Bingham. Are you ready to proceed? Proceed. Good morning. May it please the court, I'm Assistant Attorney General  of Illinois. Your Honors, in a published opinion, the appellate court here misconstrued the Sexually Dangerous Persons Act. In particular, the appellate court misconstrued the act to, one, require proof of more than one sex offense, and two, to permit commitment for treatment only upon proof that the respondent had either, A, committed or attempted an act of penetration, or, B, touched the sex organ, breast, or anus of a child for the purpose of sexual gratification. Now, this construction is inconsistent with both the precedents of this Court and with the legislative intent, and therefore, we ask that this Court take this opportunity to clarify the proper scope and construction of the SDP Act. The act has two purposes, two main purposes. One, on the one hand, we want to protect the public by sequestering the sexually dangerous person until such time as they have recovered and can be released. And on the other hand, we want to provide that sexually dangerous person with treatment so that they can be rehabilitated. And under the act, we have to show three elements. First, that the respondent has a mental disorder of greater than one year's duration. The second element is that the mental disorder is associated with criminal propensities to the commission of sex offenses. And third, that the respondent has demonstrated propensities toward acts of sexual molestation of children. The appellate court misconstrued the last two of those three elements. The appellate court misconstrued the second element by requiring proof of multiple sex offenses. Long ago, in 1985, this Court had already held that nothing in the SDP Act requires proof of multiple sex offenses. In fact, the second element doesn't require proof that the respondent committed any sex offense. What we're concerned with in the second element is whether the respondent's mental disorder causes them, makes them more prone to, more likely to, or predisposes them to commit sex offenses. Do people prove that, not by proving that the respondent has committed any particular sex offense, but by establishing through the expert testimony that the respondent's mental disorder is associated with propensity to commit these sex offenses? Even more troubling, however, is the appellate court's construction of the term sexual assault and sexual molestation of a child in the third, or demonstrated propensities, element. In defining sexual assault in the Act, the appellate court looked to the definition in the criminal code, since the phrase sexual assault is defined neither in the Act, nor in any decision of this court. And in construing the phrase sexual molestation of a child, the appellate court went even farther afield. It started out with the administrative code regulations for DCFS provision, and eventually moved to a definition of sexual conduct, and ultimately came around to a definition that looks like what in the criminal code is defined as criminal sexual abuse. But this narrow construction of this element is inappropriate. Because first, if the General Assembly had intended to equate sexual assault or sexual molestation of a child with those criminal offenses, it could and would have done so. Certainly either by direct reference to those provisions of the code, or even by using the same language. But we know, we have proof that they did not intend that construction. Because when the Act was initially promulgated in 1938, it did not contain that third demonstrated propensities element at all. That element came into the statute in 1955. At that time, there was no such offense as criminal sexual assault or criminal sexual abuse. So the legislature could not have intended those current definitions when it enacted that demonstrated propensities element. Isn't that consistent with Masterson, though? I'm sorry? Is that consistent with Masterson, the whole, let me just, the requirement with respect to substantially probable the person will engage in a commission of a sex offense in the future? Correct, yes. That's what Masterson told us. Okay. And do you have a problem with that requirement? Absolutely not. In fact, the legislature has, since the time of the trial in this proceeding, codified this Court's holding in Masterson as the definition of the second element, the propensities element. It's codified this Court's holding. So your only problem is that the appellate court required the trial court to make that notation, right? No, you're right. All right. What is it, then? Pardon me? What is the problem, then? The problem here is, one, the Court, concerning the second element, said that the State had to prove multiple sex offenses. This Court has never held that. In fact, in People v. Allen from 1985, this Court had said there's nothing that requires proof of more than one sex crime. In fact, requiring proof of any sex crime, it doesn't belong in the second element. Proof of a demonstrated propensity, proof of a sex crime, that's a question for the third element. Help me there. The second element says, coupled with criminal propensity to commit to the commission of sex offenses. You're saying sex offenses doesn't mean sex crime? No, Your Honor. As this Court held in People v. Allen, this Court construed the similar plural language in the third demonstrated propensities element and said that the statute is really concerned with predicting the future behavior. We're talking about propensities and not sex offenses or multiple acts of sexual assault or multiple acts of sexual abuse of a child. So we read out the word offenses out of the statute. We don't have to – it doesn't need to be an offense even though the statute says sex offense. I'm sorry? The statute says sex offense. We should not consider that as an – the language of offense meaning a crime. We should read that out. Right. The sex offense is not – I guess I'm not sure I understand your question. I'm sorry. Maybe I didn't understand. I meant to say I didn't understand what you said, that the language of it says coupled with criminal propensity to the commission of sex offenses. Yes. Okay. You're saying we don't need to make it plural, but you agree that it has to be a sex offense in the sense of a sex crime. Right. What I'm saying is that the proof of an actual commission of some offense, some sex offense, comes in in the third element, that they demonstrated the propensities. With the act – the court held in People v. Allen, the person has a – people subject to commitment for treatment under the act. They have a mental disorder and this disorder predisposes them to – they have propensities. As a result of this mental disorder, they have propensities to commit sexual offenses. But we're not going to commit people based on the expert's opinions alone. There's propensity evidence. I mean, that's why the General Assembly added that third element, the demonstrated propensities element, and requires proof of one – at least one act of sexual assault or sexual molestation of a child. What do we do about the language in the definition of mental disorder? Mental disorder means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence. Right. Violence. That was grafted onto the SDP Act in Masterson. This Act is – as I mentioned, the SDP Act predates that by some 60 years. Mental disorder was not defined. In a concern for due process concern that arose, this Court grafted that on – that definition from the SVP Act onto the SDP Act. But essentially, it's already there by saying that they have – the mental disorder causes them to have these propensities to commit sex offenses. That are violent. That are violent. No, they need not be violent. What do we do with the word violent that's in the statute? There's – no, sexual – there's not the word violent here. No, the sex offenses. Sexually – sexual violence. The definition of mental disorder includes propensity to engage in acts of sexual violence. Correct? Yes. Okay. So what do we do with that? That language? Yes, they did. Certainly, even the appellate court that would hold the state to proving more than one sex offense – even the appellate court found that her attack on her teacher was a sex offense, was sexually violent. The court recognized that respondent had pushed her teacher back down into a chair, kissed her on the lips, forced her tongue into the teacher's mouth, and reached down her shirt to grab her breast. And the court said that would certainly be a sex offense, a violent sex offense, but mistakenly required the state to prove more than one sex offense. So that event alone would be enough to find her sexually dangerous? I'm sorry? That one event would be enough to find her sexually dangerous? Yes. Yes, because we know that the General Assembly did not intend for those terms, sexual assault or sexual molestation of a child, to have the statutory meanings in the criminal code because those definitions were not there. And so instead we should give these provisions, the meanings of sexual assault and the phrase sexual molestation of a child, their commonly understood meanings. Which assault would be an intentional or knowing and a non-consensual touching for the purpose of gratification or battery, sort of an offense, an intentional knowing touching, an offensive touching in that sense. But it wouldn't have to include penetration. Indeed, if the legislature had intended to include penetration, it could have back when it wrote the statute in 1938 specified that it applies only to rape, which offense did exist at that time. Similarly, the ordinary meaning of sexual molestation of a child would include intentional knowing or touching a child that's done for the purpose of sexual gratification. The appellate court's limitations on touching of a child to those three areas, the breast, sex organ or anus, excludes from commitment for treatment people who molest children but avoid those three particular areas. What was unreasonable about the, because you mentioned it two or three times now, about the court looking to the criminal code for definitions? What was unreasonable about that, them looking to the criminal code for definitions? It can be reasonable in a given case. It's unreasonable in this case because those provisions, criminal sexual assault, did not come into the code until 1984. And so the General Assembly, when it enacted the demonstrated propensities element that uses the phrases sexual assault and sexual molestation of a child, could not have intended a definition that was not going to come to being until 1984. So it's only in this instance. It can be proper in the correct case to look. It's also inappropriate to suggest that the court or that the General Assembly didn't intend the statutory definitions because there really is no statutory definition for sexual molestation of a child. The court had to go around the back way and come through the administrative code regulations to sexual conduct and then come back around to criminal sexual abuse of a child before it could incorporate that definition. You said that based upon her conduct of kissing the teacher and touching the teacher that that was sufficient to show that she was, that was sufficient to show that she was a dangerous, sexually dangerous person. What's going to happen to her? She was 19 years old when this took place. What's going to happen to this girl? I'm sorry, what would happen what? She's been found sexually dangerous, correct? She was found sexually dangerous based on what you just described. What happens to someone who's found sexually dangerous? What happens when she's found sexually dangerous? She's committed to the director of the Department of Corrections for care and treatment until such time as she's no longer sexually dangerous. Dr. Jekyll testified that the Department of Corrections would prepare an individualized treatment protocol for her. What happens then is if the administrator, in their opinion, they feel that she's no longer sexually dangerous, they can petition for a discharge, or the Respondent herself can file a petition for discharge. Actually, the term petition is for recovery under the Act, but essentially saying that I am no longer sexually dangerous, here is my expert, here is my progress in treatment, and I should be discharged. How long can she be held in the Department of Corrections for this? She may be held indefinitely until she's recovered, until she's no longer sexually dangerous. If we adopt your broader definition of sexual molestation of children, what evidence was presented showing that the defendant engaged in acts with children? The people's proof at trial, they relied on the contact and Respondent's then-16-year-old girl, Katie Kaepfen, who was at Grace House, where she had apparently been following Kaepfen around the group home that day and trying to touch her buttocks, and ultimately did touch her buttocks. Was there anything else? No. The only two incidents that were introduced as proof, and the third element were those two offenses, was the acts or conduct with the teacher and the conduct with Katie Kaepfen, the 16-year-old. Counsel, on a different subject, why would we not require the trial court to make the explicit findings and not merely rely on the expert's testimony? This court could require, could remand for an explicit finding. My argument is just that we're not saying that it's not required. Certainly Masterson does require it. We're just saying on this record it's plainly harmless because Dr. Killian used the appropriate standard. Nobody ever employed a different standard, a lesser burden of proof. Respondents never argued that she was prejudiced. That's the only reason. This court very well could remand for compliance with Masterson findings. In conclusion, I'd like to say that this Court should hold that the appellate court really erred in narrowly, so narrowly defining those two terms in the demonstrated propensities element. They should be given their commonly understood meanings and properly defined. The evidence here suffice to show that Respondent is a sexually dangerous person. Thank you. Ms. Hawkins. Good morning, Your Honors. May it please the Court, Counsel. My name is Monica Hawkins and I represent Ms. Bingham, the defendant in this case. The appellate court in this case reversed the trial court on three separate reasons. The first reason was because the trial court failed to make the explicit finding as required by Masterson that was a clear and obvious error and a required mandate for reversing. We agree with the appellate court and ask that you affirm that decision for that reason. The second reason they reversed the trial court was because, as Counsel indicated, with regard to the second element of the Sexually Dangerous Persons Act, the State is required to prove that the mental disorder is coupled with the criminal propensity to the commission of a sex offense. In this case, the appellate court held two things with regard to that second element. One, that the criminal propensities, you have to prove more than one. And two, they defined sex offense. With regard to criminal propensities, the appellate court stated that you have to show more than one sex offense, and that is a correct ruling. Showing one sex offense would not have been enough. You needed to show more than one. Then they went on to define sex offense by utilizing the criminal code. Again, that was a proper procedure to do. They defined sex offense to both include sexual penetration as well as sexual conduct pursuant to the criminal code. When you put those together with regard to the facts in this case, the only thing that was presented at the trial court was with regard to the teacher, where the defendant pushed her down, stuck her hand down her shirt, and tried to kiss her. That was the only sex offense they showed in this case. That was not enough to meet the criminal propensities element of the second element of the SDP Act. And the appellate court reversed based on that, and that decision should be affirmed. The third reason why they reversed the trial court was because of the third element, which states that the defendant must have demonstrated propensities toward the acts of sexual assault or sexual molestation of children. This one you only have to show one. That's already been stated in Allen. Then the appellate court went on to define sexual assault and sexual molestation of children. Again, they turned to the criminal code, which is the proper thing to do. In fact, this Court did, in Allen, back in 1985, refer to the criminal code under the Sexual Dangerous Persons Act to define sexual assault. In that case, the Supreme Court was looking to see whether the defendant actually committed a sexual assault as defined in the third element, and went on to say sexual assault at the time of the alleged crime required a sexual act achieved by force or threat of force. And then referred to the criminal act as the criminal code as when it was the way it was cited at that time. It was done matter-of-factly. There was no big issue that the Supreme Court utilized the criminal code to define sexual assault or sexual molestation. In this case, sexual molestation of child then comes to intentional or direct clothing, intentional or indirectly touching or fondling of the child or accused, either directly or through clothing of the sex organs, anus or breast of the child or the accused for purpose of arousal or gratification. That didn't occur in this case. The only evidence they had was a 16-year-old girl who lived at the group home who was similar age to the defendant. The Ms. Caffin, who was a child, testified across examination. She wasn't even sure whether the touching of her buttocks was even intentional. And she even testified across examination that she wasn't even sure that the defendant looked down her shirt. That was the only evidence they had for sexual molestation of child. They had nothing else. That's all they showed. Because there was not enough evidence to prove the third element, the appellate court reversed the trial court, and that decision is correct. Ms. Hawkins, do you agree that the respondent has a mental disorder? I do agree. But just because she has a mental disorder does not automatically make her a sexually dangerous person, does not automatically mean that she needs to be locked up indefinitely in the Department of Corrections. She can get help somewhere else. There's other avenues for help there. There's other inpatient treatments she could have received but not to be locked up in the Department of Corrections just because she's mentally unstable. The State objects to the utilization of the criminal code for the definition of these terms we have discussed. That argument is incorrect for, as I stated, because this Court has already utilized the criminal code in Allen in defining sexual assault, as well as the fact that the criminal code was utilized in the second element to define sex offense, and no objection was made to that. Because the appellate court was correct in reversing the trial court on all three reasons, I'm asking Your Honors to affirm their decision. Thank you. Thank you. As I mentioned earlier, the Court erred in requiring the people to prove multiple sex acts in demonstrating the propensity element, the second element. But there's no question that to the extent that the Court was concerned about the basis, the factual basis for the expert's testimony about respondents' propensity to commit sex offenses, it was entirely unfounded. The expert testified that this was not something that had happened, come up just today. She'd had a problem her entire life with sex offenses. The expert cited 12 separate incidents against nine separate victims. In fact, the commitment petition itself listed numerous offenses, similar offenses as groping people's breasts or their buttocks. In 2005, 2006, 2009, she had. The petition alleged that. Pardon me? The petition alleged all of those things, correct? The petition alleged those events that you're just describing, correct? They were, yes, they're alleged in that case. Was there any proof of those events at trial? There was no direct proof of those facts. The experts based their opinion on those facts. That's another question I have. They're Wilson v. Clark type of evidence here. So that's my question, is exactly Wilson v. Clark. How do we deal with that? The two experts testified that their opinion was based on 12 separate events, none of which were presented at the trial court, the details of which, in fact, were not even presented at the trial court, correct? How does that legally, how does that work? Can we, therefore, rely on those 12 events? Yes, we can. In fact, under this Court's precedent, the experts need not give any factual basis for the opinion. It's up to the respondent or their counsel to challenge the underlying factual basis for the opinion. But here even respondent's own father testified that they've been having difficulty with her all along, but finally in 2006 they had to get the juvenile justice system involved because they couldn't handle her. She had threatened her father with a knife and that she continued to have these problems all along and they simply did not know what to do with her. So there's no question that the factual basis, the underlying factual basis for the experts' propensity testimony on that second element was not challenged. In fact, based on a lengthy history of similar sexual type offenses, she had admitted to Dr. Jekyll during the interview that when she sees a pretty girl that she likes, she can't control herself. May I ask what a 19-year-old boy might have said had he been asked that? Pardon me? What do you think a 19-year-old boy might have said had he been asked that question? That's not in the record. It would be relevant if she had a history of committing sex offenses against boys. Here, it's not proof of her gender preference as much as it is of her lack of control. The reason I bring that up is it's proof of her lack of control. She can't restrain her urges. So it's for that purpose that I bring that up, that I mention it. She told Dr. Killian that most of her juvenile record is for sexual-related things. So the expert's propensity testimony was well-founded. If there are no further questions, we'd ask that this Court reverse the appellate court. Thank you. Thank you. Case No. 115964, People of the State of Illinois v. Juliana Hambingham, is taken under advisement as Agenda No. 5. Storch, Ms. Hawkins, thank you for your arguments today. You're excused.